UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tekstar Communications, Inc.,

    Plaintiff,

v.                                                        Civil No. 08-1130 (JNE/RLE)
                                                       ORDER

Sprint Communications Company L.P.,

    Defendant.

R. Bruce Beckner, Esq., Fleischman & Harding, LLP, appeared for Plaintiff Tekstar Communications, Inc.

Philip R. Schenkenberg, Esq., and Kevin M. Decker, Esq., Briggs & Morgan, PA, appeared for Defendant Sprint Communications Company L.P.

       Tekstar Communications, Inc. (Tekstar), brings this action against Sprint Communications Company L.P. (Sprint), alleging that Sprint used Tekstar's network services and facilities but refused to pay certain mandatory telecommunications charges. Tekstar asserts claims for failure to pay tariffs filed with state and federal regulatory agencies, violations of the Communications Act of 1934 related to the failure to pay those tariffs, and quantum meruit. Sprint counterclaims, asserting claims for breach of federal and state tariff obligations as well as a claim for unjust enrichment. The case is before the Court on Sprint's Motion for Judgment on the Pleadings and Motion for Stay.

       Tekstar is a local exchange carrier providing local telephone service to a specific geographic region of Minnesota. Sprint provides, among other things, long distance services to consumers around the country. To connect calls to end-user customers in Tekstar's local exchange area, Sprint must "interconnect" with Tekstar's facilities. Use of Tekstar's facilities in this way is referred to as "switched access service," and receipt of switched access service

1

typically obligates Sprint to pay Tekstar an "access charge." Access charges for interstate switched access service are regulated by the Federal Communications Commission (FCC). Access charges for intrastate switched access service are regulated by the Minnesota Public Utilities Commission (MPUC). Tekstar has interstate and intrastate access tariffs on file with the FCC and the MPUC, respectively.

At the heart of this action is a dispute between the parties regarding whether connection of calls through Tekstar's facilities to certain businesses that provide conference calling and similar services constitutes switched access service under Tekstar's intrastate and interstate tariffs. Tekstar contends that connection of calls to such businesses constitutes switched access service, meaning Sprint is required to pay terminating access charges to Tekstar pursuant to Tekstar's tariffs. Sprint disagrees, arguing, among other things, that no switched access service has been provided and that the tariffs are inapplicable because the businesses at issue are not "end users" and calls do not "terminate" with them. In addition, Sprint contends that Tekstar has an unlawful "traffic pumping" arrangement with these businesses, whereby the businesses generate high volumes of calls by providing conference calling and similar services to others at little or no charge and Tekstar pays the businesses kickbacks from the high levels of tariffs collected.

As discussed at the motion hearing, the Court concludes that this action should be referred to the FCC under the doctrine of primary jurisdiction.[1] "Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making.

---

[1] The practices of Tekstar around which the present action centers are currently the subject of a complaint filed by a third party pending before the MPUC. Because Sprint has already sought to intervene in the matter, no order referring to the MPUC issues related to interpretation of the intrastate tariff is necessary. *Cf. Hoffman v. N. States Power Co.*, 764 N.W.2d 34, 50 (Minn. 2009) (indicating that Minnesota courts recognize the doctrine of primary jurisdiction).

The doctrine allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citation omitted). Two rationales support application of the doctrine. First, "courts apply the doctrine of primary jurisdiction . . . to obtain the benefit of an agency's expertise and experience." *Id*. Accordingly, referral to the relevant administrative agency may be appropriate when a case "rais[es] issues of fact not within the conventional experience of judges or . . . requir[es] the exercise of administrative discretion." *Id*. (quotation marks omitted). Second, courts defer to agencies on primary jurisdiction grounds to "promote uniformity and consistency within the particular field of regulation." *Id*. There is no fixed formula that governs whether referral of an action to an administrative agency under the doctrine of primary jurisdiction is warranted. *Id*. Instead, each case must be examined separately to determine "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." *Id*.

The Court concludes that the potential for inconsistent or contradictory rulings is great in this case because the FCC currently has under consideration several different matters that address the same or similar issues. For example, in an order dated October 2, 2007, the FCC addressed the applicability of interstate switched access tariffs to services like those at issue in this case. *See Qwest Commc'ns Corp. v. Farmers & Merchs. Mut. Tel. Co.*, 22 F.C.C.R. 17973 (2007). However, the FCC subsequently granted reconsideration of the matter and has yet to issue any final decision. *See Qwest Commc'ns Corp. v. Farmers & Merchs. Mut. Tel. Co.*, 23 F.C.C.R. 1615 (2008). In addition, the FCC has issued notices indicating that it intends to revisit the rules governing intercarrier compensation for switched access services. *See High Cost Universal Serv. Support*; *Fed.-State Joint Bd. on Universal Serv.*; *Lifeline & Link Up*; *Universal*

*Serv. Contribution Methodology*; *Numbering Res. Optimization*; *Implementation of the Local Competition Provisions in the Telecomms. Act of 1996*; *Developing a Unified Intercarrier Comp. Regime*; *Intercarrier Comp. for ISP-Bound Traffic*; *IP-Enabled Servs.*, CC Docket Nos. 96-45, 99-200, 96-98, 01-92, 99-68, WC Docket Nos. 05-337, 03-109, 06-122, 04-36, FCC 08-262 app. A (Nov. 5, 2008), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-08-262A1.pdf (order on remand and report and order and further notice of proposed rulemaking); *In re Establishing Just & Reasonable Rates for Local Exchange Carriers*, 22 F.C.C.R. 17989 (2007) (notice of proposed rulemaking); *cf.* Federal Communications Commission, Intercarrier Compensation, http://www.fcc.gov/wcb/ppd/IntercarrierCompensation/ (last visited July 14, 2009) ("In response to [certain] developments and the increasing strains placed on the existing intercarrier compensation regimes, the Commission has undertaken comprehensive reform of intercarrier compensation.").

The Court further concludes that resolution of the present action would require consideration of matters best entrusted in the first instance to the FCC's expertise and experience. Determination of whether the services at issue in this case are covered by Tekstar's tariff will require consideration of how those services fit into the larger regulatory regime. *See Qwest Commc'ns Corp.*, 22 F.C.C.R. at 17985-86 (considering the regulatory effects of competing arguments regarding whether calls made to conference calling companies should be classified as "terminating" with those companies); *cf. Access Telecomms.*, 137 F.3d at 609 (indicating that, when a case will embroil a court in the technical aspects of a regulated service, deferral to the expertise of the relevant agency is appropriate). In addition, the Court anticipates that review of the myriad factors involved in the process of establishing tariffs will be significant to gauging the scope of Tekstar's tariff, *cf. In re Establishing Just & Reasonable Rates for Local*

*Exchange Carriers*, 22 F.C.C.R. at 17992-94 (describing technical tariff-setting procedures); 47 C.F.R. § 61.26 (2007) (stating that tariffs for competitive local exchange carriers may be based on tariffs of competing incumbent local exchange carriers or of the National Exchange Carriers Association); Answer ¶ 13 (describing assumptions involved in establishing Tekstar's tariff), and Sprint contends that Tekstar's tariff should not be construed to cover the services at issue in the present dispute because, among other things, such a tariff would be "contrary . . . to agency policy," *see* Mem. of Law in Supp. of Stay 1; *cf.* Answer ¶ 17. Such considerations are more appropriately evaluated after the benefit of input from the FCC. *See Access Telecomms.*, 137 F.3d at 609 ("Where words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, . . . the issue should first go to the appropriate administrative agency." (quotation marks omitted)).

Finally, Sprint urges the Court to dismiss Tekstar's claim of quantum meruit before referring the case to the FCC, arguing that the claim is barred by the filed rate doctrine. The parties agree that if Tekstar's tariff is applicable to the services at issue in this case, Tekstar may recover only under the tariff or on related Communications Act claims and not on its claim of quantum meruit. However, if those services are not included in Tekstar's tariff, the parties dispute whether the filed rate doctrine applies to bar Tekstar's quantum meruit claim. In addition, in letters submitted to the Court, the parties question how, if the tariff is inapplicable, those services otherwise fit into the relevant regulatory scheme. *Cf. Qwest Commc'ns Corp.*, 22 F.C.C.R. at 17988 n.24 ("The Commission has forborne from tariffing requirements for non-dominant carriers." (citing *In re Policy & Rules Concerning the Interstate, Interexchange Marketplace Detariffing Order*, 11 F.C.C.R. 20730 (1996))). In the absence of clarity regarding how those services are classified and regulated, it would be premature to address application of

the filed rate doctrine to Tekstar's claim of quantum meruit. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 654-57 (3d Cir. 2003) (reversing dismissal pursuant to the filed rate doctrine of claims of unjust enrichment and quantum meruit where, among other things, the regulatory requirements with respect to the services at issue were unclear); *cf. Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 694-95 (8th Cir. 2004) (reversing dismissal of claim for unjust enrichment and remanding to the district court for a determination as to "whether the [telecommunications] traffic at issue is subject to access charges pursuant to INS's tariffs"). Such issues are obviously within the FCC's expertise and experience, and, as noted above, the FCC continues to review its treatment of practices similar to those at the center of this case, creating the potential for contradictory rulings. Consequently, the Court directs the parties to seek guidance on these issues from the FCC,[2] and the Court denies Sprint's Motion for Judgment

---

[2] The parties identify no authority indicating that the FCC is barred by the filed rate doctrine from considering claims of quantum meruit. *Cf. Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577-78 (1981) ("The considerations underlying the [filed rate] doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant." (quotation marks omitted)); *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995) (listing justifications for filed rate doctrine, including "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set utility rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime"); *America's Choice Commc'ns, Inc. v. LCI Int'l Telecom Corp.*, 11 F.C.C.R. 22494, 22504 (1996) ("We note . . . that a purchaser of telecommunications services is not absolved from paying for services rendered solely because the services furnished were not properly tariffed."); *New Valley Corp. v. Pac. Bell*, 8 F.C.C.R. 8126, 8127 (1993) ("We find no basis in *Maislin* [*Industries, Inc. v. Primary Steel, Inc.*, 497 U.S. 161 (1990)] or any other court or Commission decision for the conclusion that a customer may be exempt from paying for services provided by a carrier if those services were not properly encompassed by the carrier's tariff."). However, neither party asks the Court to refer Tekstar's quantum meruit claim to the FCC for complete resolution. *Cf.* 47 U.S.C. § 207 (2006) ("Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission . . . or may bring suit . . . in any district court of the United States . . . ; but such person shall not have the right to pursue both such remedies.").

on the Pleadings without prejudice to re-file it after the case has returned from the FCC.[3]

Based on the files, records, and proceedings herein, and for the reasons stated above,[4] IT IS ORDERED THAT:

1. Sprint's Motion for Stay [Docket No. 86] is GRANTED. This action is STAYED pending (i) resolution of the dispute by agreement of the parties; (ii) a final order in the pending MPUC proceeding and a decision on the disputed issues by the FCC pursuant to the referral described below; or (iii) further order of the Court.

2. This matter is referred to the FCC for resolution, to the extent the FCC's jurisdiction permits, of the following issues:

    a. Whether, under the facts of the present dispute between Sprint and Tekstar, Tekstar is entitled to collect interstate switched access charges it has billed to Sprint pursuant to Tekstar's interstate access tariff for calls to numbers assigned to call conferencing companies, chat line providers, and other call connection companies. The Court requests the FCC's consideration with respect to calls billed between November 1, 2005 and the date of this order.

    b. In the event that the telecommunication services provided by Tekstar to Sprint, by which calls placed by Sprint's customers

---

[3] By referring these issues to the FCC, the Court does not intend to express any opinion regarding the ultimate merits of Tekstar's claim of quantum meruit. *Cf. Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1197 (10th Cir. 2007) ("Because federal law requires parties such as Qwest and Union to set rates through interconnection agreements, allowing Union to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory mechanism." (citation omitted)); *Worldcom*, 343 F.3d at 656-57 ("If Worldcom was required to file the contracts at issue, its failure to do so would not by itself preclude Worldcom from recovering under those contracts."); *Sancom, Inc. v. Qwest Commc'ns Corp.*, Civ. No. 07-4147, 2009 WL 1748709, at *5 (D.S.D. June 19, 2009) ("[B]oth prongs of the filed rate doctrine would be implicated if Sancom were allowed to proceed with its claim for unjust enrichment."); *Iowa Network Servs., Inc. v. Qwest Corp.*, 385 F. Supp. 2d 850, 908 (S.D. Iowa 2005) ("[A]n unjust enrichment claim may exist if this Court determines the federal tariffs inapplicable." (citing *Iowa Network Servs.*, 363 F.3d at 694-95)), *aff'd* 466 F.3d 1091 (8th Cir. 2006).

[4] At the motion hearing, the Court inquired whether the parties would be able to agree on a joint proposed order referring the case to the FCC. Although the parties indicated that they could do so, they have been unable to reach an agreement, and Tekstar and Sprint submitted separate proposed orders. The Court's directions to the parties are primarily drawn from those proposed orders.

are delivered to conference call companies and other call connection companies served by Tekstar, do not qualify as switched exchange access service under Tekstar's applicable federal tariff, determination of (1) the proper legal classification of those telecommunication services, (2) whether such services are subject to federal tariffing requirements, and (3) whether Tekstar must comply with those tariffing requirements as a condition of recovering any compensation for those services.

3. Tekstar is directed to contact the Market Disputes Resolution Division of the FCC to obtain guidance regarding the appropriate method for bringing this matter before the FCC. Tekstar shall initiate proceedings as recommended by the Market Disputes Resolution Division within 30 days of the date of this Order. Tekstar is directed to furnish the FCC with a copy of this Order as part of its submission.

4. The parties are directed to submit a joint report to the Court every three months describing the status of the proceedings before both the FCC and the MPUC, the first of which shall be filed with the Clerk no later than three months from the date of this Order.

5. Sprint's Motion for Judgment on the Pleadings [Docket No. 54] is DENIED. Sprint may renew its motion when the stay of litigation is ended.

Dated: July 15, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge